and move through moved to three and three the haha uh... uh... and i think this morning's number sixteen days sixteen he won't go for a person one of the others that was there five minutes for about yes they please the court my name is max can representing the veteran in this matter tommy crawford the issue here is whether the department of veterans affairs can to withhold either granting or denying a primary claim thereby putting it into the days version of purgatory and then adjudicate a secondary what we have here is a veteran who was originally granted service connection for us the problem you can go back and and litigate the other claim if you want we certainly can't let it get the primary claim because that one is not over yet however the problem will be the secondary claim was denied so that claim is forever denied unless number one new and material evidence is submitted and even if that claim is then granted years later the effective date of that award is not going to date back to the original time but i think what your problem is that if if the board here had said well you lose on your secondary claim because your primary claim is no good you have a pretty good argument they didn't say that they said that your causal connection to the house your honor the the the secondary claim was the only claim i'd issue at the board board did not address the primary claim whatsoever the medical opinion does address a briefly and say that the house out douglas does not cause the peripheral back that's and that's the issue that the board decided that is the issue that the board decided but it only and and the court but it only it addressed it on a primary basis not on a secondary basis the arguments that we could present on a secondary basis are that the the veterans conflict condition is how it's ballots uh... causes him to be unable to exercise costume to gain weight cost him to be off of his feet which thereby caused the peripheral vascular disease we cannot make those arguments because the primary claim was not there so the only arguments that the veteran committee for the board and the only arguments that the court would accept or that the house ballots claim is a primary condition meaning that it was primarily due to some incident that happened in service if it were allowed to address it on a secondary basis the arguments change completely and that's the problem that we have here we were allowed to bring forth those arguments and that it was a lot of bring forth those arguments because the claim was denied uh... without his there that the the claim is the secondary condition was didn't denied without the primary condition being adjudicated so the arguments would change completely whether the and i know the board addresses that and and the board's language sounds like it does address those arguments but it really does because it's only addressing it as a primary condition not as a secondary we see secondary conditions all the time uh... for example if you if you're a veteran and you have post-traumatic stress disorder the PTSD might cause you to drink alcohol and the alcohol drinking might cause you have a esophagus condition or stomach condition the esophagus and the stomach would be secondary conditions if there was no PTSD you could only claim the stomach and the esophagus were directly related to service which is the same thing that happened here to Mr. Crawford and he he quite frankly had no other way to to go about it uh... i think the record is clear that he had a hallux valgus claim that was pending he had filed a notice of disagreement the VA acknowledged that notice of disagreement uh... they specifically acknowledged it on joint appendix page forty three as an unrepresented party he had no other reason to believe that his claim was not still currently pending all of his arguments to the board to the VA all related that his foot condition was the cause of his vascular condition and the board hops around that and says well you don't have a vascular condition that's related to service when in actuality the argument is that the vascular condition is related to the foot condition and that's what we have here you know we we see these cases quite a bit where the VA just refuses to act and I know the secretary believes that a unrepresented veteran should file a writ of mandamus to the court of appeals for veterans claims this veteran did not have an attorney represent him did not have an attorney represent him before the board there's there is he had every reason to believe that his foot claim was still pending the VA told him so the VA told him so on joint appendix forty three his foot claim is still pending and in his mind it is still pending but the secretary is going to say it's no longer pending because he didn't file a timely notice of disagreement and if his foot condition that's a different issue than the one we have that that is a different issue your honor but if his foot claim is still pending then all we ask is that this court develop a rule where a secondary condition cannot jump to the front of the line before the primary condition the VA has refused to issue a statement of the case on the primary foot condition the board refused to address the primary foot condition instead they're simply addressing the secondary condition getting rid of the secondary condition and thereby not giving the veteran any recourse to pursue his claim in the proper the proper course he can't make those arguments that the foot condition causes him not to exercise because those arguments aren't valid unless you have a primary service connection I'm not understanding why it is that the decision of the board starting with the medical examiner and the board they seem to be saying that the vascular condition was not caused by the hallux valgus that's correct and therefore even if hallux valgus is determined to be service-connected and compensable at whatever rate the vascular disease would go away so why that seems inconsistent with the argument you're making here which is that they ignored the relationship between the hallux valgus and the vascular disease I don't see them having ignored that well they don't ignore it but they only view it as a primary condition so if you read the board's... I don't know they said it's not not caused by the condition of the feet or hallux valgus etc it wasn't caused by it therefore that's whether you call it primary or secondary the issue in both cases is causation, is it not? the issue is causation but they say there's no causation but you can't reach the level of causation unless you have a primary condition to hop on well but they're saying that even in effect what they're saying it seems to me is that even if there is evidence of hallux valgus that there's no causal connection between that and the ultimate determination of vascular disease but if you read the board's decision and the court's decision neither of them address the arguments that because of the veteran's condition of his feet he was unable to exercise if you read the medical report the medical examiner says peripheral vascular disease is most likely caused to obesity poor work ethics not able to work out the board doesn't address that issue and the court doesn't address that issue because they don't have to because they're addressing it as a primary condition if he already had a foot condition that was rated and that was granted by the board or by the VA, the board would have to address the veteran's arguments that his peripheral vascular disease is a secondary condition because he was unable to work out, unable to exercise, unable to be on his feet and that is what caused... But he would still have to show at that point some sort of causal connection he would and if the board would have denied it because the board found that the evidence wasn't sufficient for that causal connection we wouldn't be here. But that's what they did do they said there wasn't a causal connection. What's the difference between finding no causal connection now and finding no causal connection after you litigate the Halix-Valgus claim? if you... the difference would be that the veteran would have the opportunity to be heard on his arguments as to whether or not his foot condition and all the issues that are associated with it, meaning that he cannot stand on his feet meaning that he's unable to walk, unable to run all of those issues contributed or caused the peripheral vascular disease those arguments he was not allowed to make. He tried to make them but as you can tell from the board's decision and you can tell from the court's decision they don't even mention those arguments because they don't have to here the difference is minute and it's picking points but if you look at what the veteran said all along, he has said my foot condition causes my vascular disease plain and simple but it's not just because I injured my foot in service and the bunions on my toe magically caused this vascular disease. No, that's impossible. We know that's impossible the difference is the foot condition caused him to be unable to exercise which then causes the vascular disease that's his argument that's the crux of this argument and that's the only argument you can make and you can't be successful in that argument unless you are service-connected for the foot disorder and the board doesn't address it. You look on page 112 of the Joint Appendix on the issues, that issue is not even brought up before the board and that's why we have a strong due process here argument that the veteran is not being given an opportunity to be heard on this issue he's not being able to he's frankly being ignored by the VA and having that claim sandwiched and pushed to the back of the line so with no further questions on this I'll wait for rebuttal okay, thank you Mr. Sweet Thank you, may it please the court, I'd like to respond first to the point that the board in fact did address these arguments. If you turn to Joint Appendix page 122 the first full sentence says quote it was also opined that it is less likely than not that his peripheral arterial disease is the result of a condition of the feet bilateral feet pain injury event or disease incurred in service end quote and then if you look at the first sentence in the next paragraph says as the lay as to the lay claims from the veteran and others that the appellant's bilateral lower extremity peripheral vascular disease was caused by service the board finds that the above VA medical opinion was more probative than these lay claims because health care professionals have more expertise end quote so the board did consider his claims uh... that uh... the hallux valgus caused uh... his peripheral vascular disease but he rejected those. Those are factual findings that this court cannot review uh... the entire argument uh... that this is somehow a secondary and primary disease relies on overturning a factual finding by the board that there in fact is no causal connection so in essence that means that this is not a secondary condition uh... but even if it were uh... he could uh... if he were ultimately to be able to go and get service connection for his hallux valgus and he didn't have this impediment of a lack of causal connection he could go back and file a Q claim uh... and uh... get service connection back for his uh... vascular disease. In this case that couldn't happen because as you pointed out there's no causal connection between the two diseases so even if he does have uh... service connection for the hallux valgus uh... he's not going to be able to get it for the uh... vascular disease. Now Mr. Kinman uh... suggests that uh... the VA uh... if he tries to reinitiate his hallux valgus claim will claim that he's untimely what's the VA's position on I mean this is procedurally a mess thanks in part I think you'll agree to the VA's having slipped up in a couple of respects in the advice that it gave him as to when things were due. What's the VA's position with respect to the status of his pending hallux valgus claim? Certainly in the uh... you're absolutely correct that July a letter was incorrect in that uh... but the problem that he faces is that then in June. But that's not the only one. In December I think there was a uh... an incorrect letter as well was there not? No, I think the only one that was incorrect was the July uh... letter which indicated that incorrectly that he had filed a timely notice of disagreement. And the VA has acknowledged that that was a mistake. The problem is that then in January 2008 the VA sends another letter saying no we made a mistake you actually don't have a pending notice of disagreement uh... and uh... Mr. Crawford has not done nothing. That's the last communication regarding this. So for nearly four, five, six years the ball's been in his court. But that is an issue the VA has to resolve in the first instance. But it will be up to Mr. Crawford to go back to the R.O. and he'll have to explain why he didn't respond to that letter within a year. Because that decision that he doesn't have a timely notice of appeal is itself an appealable decision. So at that point he could have and should have filed a notice of disagreement with that January letter and uh... he had a year to do that, he didn't. To the extent he's arguing he was pro se or he didn't understand the letter again, I mean those are issues that he's going to have to raise before the R.O. in the first instance. He can go back now at this point, file that notice of disagreement and try and justify it. The R.O. will have to consider that in the first instance. If your Honors have no further questions, I respectfully request that the Court affirm the Veterans Court. Thank you, Mr. Swayne. Thank you, Your Honor. Judge Bryson, to answer your question in part, as you can tell from the Secretary, they're not answering it. They're not saying whether or not the claim's still pending or not. They want the Veteran to go back, file a new claim with the R.O., file a new notice of disagreement. They act like after that letter he didn't do anything. Joint Appendix, page 56, March of 2008. He argues, I've already filed a notice of disagreement for my house values. He's still arguing it. July of 2009, he's still asserting the same argument. Joint Appendix, page 82. What was the first J.A. site they gave you? Page 56. So that's after the alleged denial from the V.A. He's saying, I'm filing another disagreement. Here's my reasons. I've already filed a notice of disagreement with the decision to sever my previous service-connected conditions for my feet. I don't know what else this man can do other than to tell the V.A. that he disagrees with the foot claim. That seems to me to be pretty evident. I think it's completely evident. I don't think there's any acquiescence indicated by this record. And so then the issue becomes, if this claim is still pending, if this foot claim is still pending, why doesn't he have an opportunity to be heard as to why the foot claim causes the peripheral vascular disease? I go back to my PTSD example because I think it's a lot clearer to understand because these diseases are a little more complicated. If you have PTSD, and let's say the same situation exists, where you had a PTSD claim and you disagreed, but the V.A. did nothing with it. And then you filed a claim for throat cancer. And the whole time you're saying, my throat cancer is because I drink too much alcohol because of my PTSD. You're going to get the exact same case file here. You're going to see the board, and the board's going to say, well, your throat cancer is not related to service and it's not related to PTSD because PTSD doesn't cause throat cancer. But that's the point at which the veteran says, yes, it does in my case. And here's why. And that's what he's tried to do, but they haven't addressed it at all. But that really goes to the merits of whether you think the board has messed up the factual determination, but that's not something that... If the board had put in this decision, or in my PTSD example, if the board would have put in, PTSD caused alcohol problems for this veteran, but the alcohol did not cause the throat condition, I'd have no argument. If in this case the board would have said, the veteran had a foot condition, he wasn't able to exercise, we hear his arguments, we hear what his evidence submitted on that is, but we disagree with that, we wouldn't be here. So you put in evidence, or your client put in evidence that he was unable to exercise because of the hallux valgus, right? That's his entire claim. Yeah. Every time. So your real complaint is they didn't discuss that. Right, and they didn't discuss it because there was no reason to discuss it. They didn't have to discuss it because the only way they would have to discuss it is if there was a primary claim to talk about. There was no primary claim here to talk about. If you got throat cancer, sorry, it's not due to you having PTSD. That's different than you have throat cancer, it's not due to your alcohol usage, which is due to your PTSD. That's the step here that's missed. And it's frustrating because these folks, they come in, they serve, they do their duty to our country, they go all this way dealing with the mess of bureaucracy of the Veterans Administration, he makes these arguments over and over and over. Once he has counsel at the Court of Appeals for Veterans Claims, I make these arguments for him, and we have a board decision that ignores it. We have the Honorable Judge down in the CAVC who says, well, I don't have to address it. And you have the most important thing, I think, is Joint Appendix, page 108. This is the medical examination that the board relies upon and that the court relies upon. And on page 108, what the examiner says is that this is caused by obesity, hypertension, hyperlipidemia. Those are what cause peripheral vascular disease. And what the examiner doesn't do is make the next step to say that the veteran's obesity, hypertension, and hyperlipidemia are due to him not being able to walk. The examiner doesn't address that issue because he doesn't have to, the board doesn't address it because they don't have to, and the court doesn't address it because they don't have to, because the secretary messed up on this case and it wasn't properly in front of him. Thank you, Your Honors. Okay. Thank you, Mr. Kinman. Thank both counsel. The case is submitted. That concludes our session for this morning. All rise.